## Seibert *versus* Bakewell.

Under the provisions of the Limited Partnership Act of 1836, where the
general partner misappropriates the contribution of a special partner, the
latter is not liable as a general partner for the debts of the partnership
where he is not privy to the misappropriation.

November 4th 1878. Before AGNEW, C. J., MERCUR, GORDON
and TRUNKEY, JJ. SHARSWOOD, PAXSON and WOODWARD, JJ.,
absent.

Error to the Court of Common Pleas No. 1 of *Allegheny county*:
Of October and November Term 1878, No. 255.

Assumpsit by Frank Seibert against Benjamin Bakewell, Jr.,
John Lippincott, Benjamin P. Bakewell and Thomas Bakewell,
late partners as Lippincott & Bakewell.

Benjamin Bakewell, Jr., the defendant, was a member of the
firm of Lippincott & Bakewell, a limited partnership, organized
July 1st 1869, under the Act of 1836, and composed of John Lip-
pincott and Thomas Bakewell, general partners, and Benjamin P.
Bakewell and Benjamin Bakewell, Jr., special partners.

The firm of Lippincott & Bakewell became indebted to Seibert,
the plaintiff, in the sum of $3816.77 for goods sold to the workmen
of the firm on orders given them by the firm. The plaintiff brought

his suit to September Term 1876, against all the members of the firm ; but Benjamin P. Bakewell having died, Thomas Bakewell having received his discharge in bankruptcy, and John Lippincott not having been served, the trial proceeded as against Benjamin Bakewell, Jr., the only remaining defendant.

It appeared on the trial of the case, that a limited partnership, under the firm name of Lippincott & Bakewell, composed of the same parties, viz., John Lippincott and Thomas Bakewell, general partners, and Benjamin P. Bakewell and Benjamin Bakewell, Jr., special partners, had been organized in October 1864, to terminate June 30th 1869.

On June 30th 1869, when the old partnership terminated, the interest of the special partners was estimated at $20,000 each, and they were each given a firm check for that amount on the Allegheny Savings Bank, where the firm had only $4000 to its credit.

It also appeared that Thomas Bakewell, one of the general partners, had arranged with Holmes & Sons to cash these checks, and the special partners were directed by him to go to Holmes & Sons who would cash them. They did so, and left the money with Holmes & Sons, and on July 1st 1869, when the terms of the new partnership had been agreed upon, and it having been agreed that the special partners should each make a cash contribution of $20,000, the special partners drew their checks to the order of the new firm on Holmes & Sons for that amount, and gave the checks to Thomas Bakewell, who took them to Holmes & Sons, but neither received the money on them nor had them credited to the new firm, but allowed Holmes & Sons to credit the checks to the old firm against the checks of the old firm on the Allegheny Savings Bank which Holmes & Sons held.

Under this state of facts the plaintiff submitted the two following points, both of which the court, Stowe, P. J., refused :—

1. That if the jury believe from the evidence that the general partner arranged with N. Holmes & Sons to cash the two checks drawn on the Allegheny Savings Bank, and directed the special partners to go to N. Holmes & Sons with these checks, and that the special partners did take these checks to N. Holmes & Sons and got them cashed, and then allowed the money to remain there, and afterwards gave two checks on this money for the amount of their contributions, and that the general partners handed these checks to N. Holmes & Sons in payment of the amount advanced on the checks on the Allegheny Savings Bank ; then there was no bona fide payment into the stock of the partnership by the special partners, but a merely formal one, pursuant to a contrivance to evade the Limited Partnership Act ; and the affidavit of the general partner appended to the articles of association contains a false statement, and the defendant becomes liable as a general partner. And

in passing upon this question, the jury need not find that the defendant participated in the contrivance, or knew of it.

2. It is the duty of the special partner, if he claims the immunity of the Limited Partnership Act, to see that his contribution actually goes into the stock of the firm; and if the contribution is misappropriated by the general partner, instead of going into the stock of the company, the special partner becomes liable as a general partner, without the qualification that a bona fide payment to the general partner, for the use of the firm, as a part of the capital stock, is a payment to the firm.

The court affirmed the third point of defendant, which was as follows:—

The defendant requests the court to charge that if the jury find that the defendant, on July 1st 1869, became, and was, a special partner of the firm of Lippincott & Bakewell, having in good faith paid in cash his contribution of $20,000, then, wholly independently of the other grounds of defence, the plaintiff is not entitled to recover; and in passing upon the question of the good faith of defendant in paying in the money, all that the law requires is that the special contribution be paid over in good faith to the general partner; that, in the present case, the conduct of the general partner in drawing checks against the Allegheny Savings Bank for the sums of money in excess of the moneys to the credit of the firm, in arranging with N. Holmes & Sons to cash said check, and in failing to cause the general books of the new firm to show entries of the payment of the special contributions, cannot affect the defendant, if the jury believe that he, in good faith, and in the manner testified to by him, paid in his contribution.

In their general charge the court also, inter alia, said:—

"The defendant was special partner in a firm composed of two general partners and two special partners. He paid in $20,000 to the partnership by a check on N. Holmes & Co., bankers, which was equivalent to paying it in bills. It may be there was some arrangement or contrivance which would not have stood the test of a legal examination, so far as the general partners were concerned, between Holmes & Co. and the Allegheny Savings Bank, by which the former cashed a check on the latter bank, when there was only $4000 on deposit to the credit of the firm; yet, although that may be the case, before this defendant can be affected by it, you must be fairly satisfied, and the burden of proof is upon the plaintiff, to show, that Mr. Bakewell was a party to that transaction; that he got this money or the control of it, knowing what the other parties knew, and that he either actively or passively acquiesced in the arrangement, knowing how it was made and the purpose of it. The moment a special partner endeavors to interfere with the business of a firm he loses the protection of the law making him a special partner. If he takes any part or lot in the management

[Seibert v. Bakewell.]

of the firm affairs, he makes himself liable as a general partner. * * * The principle of law is clear and specific, as we understand it, and it is for you to exercise your own reasonable judgment, bearing in mind that the plaintiff must make out fairly and reasonably, by the weight of the evidence, the allegation that the defendant was a party to an illegal contrivance, or a contrivance for the purpose of making it appear he was putting money into the firm when he was really not doing it."

Verdict for defendant, and after judgment plaintiff took this writ, assigning for error the answers to the foregoing points and the portions of the charge noted.

*James S. Young,* for plaintiff in error.—The requirements of the Act of 1836 must be strictly observed: Andrews *v.* Schott, 10 Barr 47; Hogg *v.* Orgill, 10 Casey 344; Richardson *v.* Hogg, 2 Wright 155; Smith *v.* Argall, 6 Hill 481; Argall *v.* Smith, 3 Denio 436; Bowen *v.* Argall, 24 Wend. 504; Madison County Bank *v.* Gould, 5 Hill 311; Van Ingen *v.* Whitman, 17 Sickles 513. It is not a compliance with the statute to make the contribution in credit, or in any other thing except cash, however convertible into money: Van Ingen *v.* Whitman, 62 N. Y. 513; Hogg *v.* Orgill, 10 Casey 344; Haviland *v.* Chace, 39 Barb. 288.

*George Shiras, Jr.,* for defendant in error.

The judgment of the Supreme Court was entered November 11th 1878,

PER CURIAM.—It seems to be clear to us that there was an actual bona fide payment of the $20,000, by each special partner into the hands of the general partners. The special partners were actually paid and each had his own $20,000 in his hands from their former partnership, and made a *special* deposit of it with Holmes & Co. It is clear that Holmes & Co. had no claim against them and could not retain the money, because they had lent it to the general partners. The general partners were their individual debtors and had parted with the money by making a bona fide payment, if, as the jury have found, the special partners were not privy to the arrangement for the loan and return of the money. They gave their checks, or rather orders, on the special deposit alone, and it was accordingly paid over.

Judgment affirmed.